Number 25-11449, Jacob Marullo v. Rivian Automotive, LLC, et al. Mr. Pearson. Yes. Good morning, Your Honors. May it please the Court? Good morning. I'm Larry Pearson representing the appellant, Plaintiff Jacob Marullo. Rivian understood and took seriously Mr. Marullo's complaint about kickbacks on the part of his supervisor, Johnny Deutsch, and that he was benefiting personally from company resources and business. And the successor supervisor, who is the supervisor to Deutsch as well, Wasim Ben Said, quickly fired both the accused and the accuser after the company completed its investigation, which partially substantiated Mr. Marullo's complaints regarding Mr. Deutsch and the suspected kickbacks that Mr. Deutsch was receiving, as well as his misuse of company resources on behalf of his friend's vendor companies. The district court made three primary critical errors in dismissing Mr. Marullo's SOX claim. First, it applied and held Mr. Marullo to a higher, recently discarded, definitively and specifically standard for protected activity under Sarbanes-Oxley, rather than the proper totality of the circumstances test adopted by the 11th Circuit and Ronnie. Isn't Ronnie, though, a little bit different? I was on the panel in Ronnie, and in Ronnie, the question was, what did the whistleblower have reason to believe at the time, not what he or she put in the complaint, right? So I don't think that the Ronnie superstructure necessarily applies jot for jot here. Isn't part of your problem here is that SOX protects whistleblowers with respect to six particular categories of federal violations, and the only law that I can see cited in the complaint is export control laws. It's not one of the SOX categories. Well, Your Honor, as far as the complaint, this obviously is a motion for summary judgment. Obviously, the district court can rule sua sponte as it wishes. But the complaint does, in the Sarbanes-Oxley cause of action, state that Mr. Marullo's complaints did implicate various species of fraud in the context of the categories under which his complaints fell within the enumerated laws under SOX. Okay, so just help me. Where is the clearest place that the complaint tags the alleged fraud? I'll give you the fact that there are lots of sort of like references to fraud and legal violations, fraudulent conduct, fraudulent and improper activities. But the only law, so far as I can tell, that the complaint ever cites is a violation of export control laws. Now, truly true on appeal, I feel like we're kind of trying to like jam this into wire fraud. But what in the complaint says wire fraud? The complaint does not state wire or mail fraud, Your Honor, but it does state that Mr. Marullo's complaints fell under various species of fraud. The complaint does not, in fact, contend that, and we didn't contend on summary judgment, that the export control laws fall under Sarbanes-Oxley. That was part of Mr. Marullo's complaint, and it shows that Mr. Marullo did believe that Mr. Deutsch was engaged in illegal conduct through trying to transfer confidential third-party information to his friends' companies and using employee time to do work for his friends' companies, as well as his strong and well-founded suspicion that Mr. Deutsch was receiving personal things of value from and through his third-party vendor relationships. So I guess I'll spot you, I guess like just to conserve your time, I'll spot you fraud. Like sort of fraud in the ether. And I'm just trying to figure out whether you think there is some obligation under the SOX whistleblower protection provision to flag that this is one of the enumerated species of fraud that SOX cares about. Certainly, in order to get to trial, Your Honor, you need to have a cognizable legal theory under one of the enumerated statutes. There was no motion to dismiss. There was no amendment to the complaint. In the other cases cited by the district court and by the appellees in the briefs, all of the cases either introduced an entirely new legal theory, a different statute, a totally different factual theory, or undermine their own theory on an amended complaint. In our case, there was no amendment. And, again, the cause of action states specifically fraud, as the court is pointing out. And it's most clearly illustrated in the cause of action. But at summary judgment, you can't – I know you're not asserting this, but you can't rely simply on the allegations of the complaint. You've got to come up with some evidence from which a fact finder could rule in your favor. And so what was the evidence presented at summary judgment with regards to one of the SOX categories? Absolutely, Your Honor. So we relied on wire and mail fraud. And the factual theories there were supported by record evidence, including that Mr. Deutsch was, in fact, found to have received something of value from a third party. As far as Mr. Murillo's own complaints, back in June of 2021, he directly complained and objected to Mr. Deutsch that he was allowing undue influence in his contractor relationships and making inappropriate deals with his friend's vendor companies. When he complained in October 2021 to HR, he complained expressly of unethical business practices, as well as being coerced to use certain vendors that had conflicts of interest with the company. The company clearly understood Mr. Murillo to be complaining about illegal kickbacks and improper kickbacks to the company that Deutsch was benefiting from because they conducted a three-month investigation in which Mr. Deutsch was questioned about whether he received things of value from contractors. He lied about this. He kept information from the company regarding moonlighting and receiving, at least in one instance, a cash gift certificate from one of his third party companies. Kickbacks are not necessarily mail and wire fraud. Correct, Your Honor. Mail and wire fraud is a different species of financial crime. Mail and wire fraud is implicated here, Your Honor. And it's been recognized, kickbacks have been discussed in the mail and wire fraud context in cases such as Crane v. Lithia Tow and Collins v. Beezer Homes. The reason that those categories under SOX are implicated is because mail and wire fraud, it's not just the proverbial email from a foreign prince asking you to hold money for him, right? Mail and wire fraud merely requires that mail or the wires be used in furtherance of a fraud on a victim. Okay, but what is the fraud? The fraud— Is there fraud aside from the kickbacks that you're claiming? Well, the kickbacks were the primary suspected fraud that Mr. Deutsch was using, unbeknownst and keeping it from Rivian, that he was using his position as someone who engaged in procurement to funnel business to his friends while benefiting personally from that business. But that sounds more like honest services fraud or something like that than mail or wire fraud, which would require a loss to Rivian, right? So maybe this is Judge Pryor's question. What's the fraud to Rivian here? What's the evidence? I guess this is dovetailing both with Judge Jordan's question and Judge Pryor's question. What's the summary judgment evidence of like a fraud loss to Rivian that I think would be required for either mail or wire? The fraud loss is that Mr. Deutsch was breaching his duty of loyalty and fiduciary duty to Rivian by using his position to funnel contracts to companies that, certainly in Mr. Murillo's view, were not the best suited to these contracts. And it was undue influencing who was doing work for the company. Other examples that Mr. Murillo did testify to and complain to the company about at the time included use of Rivian employee time to do work for these contractors. That is certainly a loss to the company. As well as Mr. Deutsch attempting to force people to share other vendors' confidential third-party information with his friends' companies to help them in competitive processes. Mr. Deutsch was using his ability to grant contracts of up to $200,000, certainly meeting the materiality element, to funnel this business improperly to these particular vendors, who, again, Mr. Murillo did not believe were the best for this work. Is that enough, though, in a fraud case, this idea of the contracting process being improperly influenced, where the company actually receives the value of the services? Well, under cases such as U.S. v. Bradley and U.S. v. Maxwell, it's pointed out that under the wire and mail fraud federal statutes, the wires or mail simply need to be used in furtherance of, or even just in the ordinary course of business. They don't need to actually contain the false statement or be central to the fraud or scheme. So the fraud here is Mr. Deutsch misleading and leading Rivian to believe, hey, I'm giving contracts in the proper course here, not without undue influence in the company's best interest, when in fact he was not doing that. And indeed, the company's investigation found in December 2021, just a month before Mr. Murillo is terminated, and just a couple of weeks or so before Mr. Deutsch is terminated because of his conduct in that investigation, the company found that he had, quote, created a perception of a conflict of interest and that he had not been forthcoming in connection with that investigation. This shows both the company taking it seriously and understanding Mr. Murillo's complaint, and the result of that investigation shows how reasonable and well-founded Mr. Murillo's beliefs were. Part of the problem I think for me is trying to understand how to separate the ethical issues that surrounded Mr. Deutsch's work at Rivian from fraud as set out as one of the predicate offenses or predicate crimes in SOX. So let me ask you this hypothetical. Assume that what Mr. Deutsch did was direct contracts to a friend of his, and Rivian got benefit. It didn't overpay. It paid market value, same thing that another player in the market would have charged, right? But the product may not have been quite as good. Is there fraud? There is a reasonable belief in fraud. Where's the fraud? Where's the fraud? Who's defrauded, and where does that come from? Yes, the fraud is the reasonable belief in fraud, Your Honor. The plaintiff has not required that there be in fact fraud, right, that there be in fact an overpayment or something like that. It's the reasonable belief that the signs are here that this is a kickback situation. And Mr. Murillo reported that fraud, i.e., again, Mr. Deutsch is pressuring people to use these vendors. He's doing it noncompetitively using that threshold. And the reasonable belief that he was benefiting personally from these relationships, which is deceiving Rivian and causing loss to Rivian based on misrepresentations, was reasonable. And cases such as Collins and Crane consider kickback schemes in the context of the wire and mail fraud enumerated statutes under SOX. All right. Thank you very much. You've saved your time for rebuttal. Thank you. Mr. Robertson. Good morning, Your Honor. This is Chris Robertson, CIFAR-SHA for Rivian. I think the panel has focused on the critical issue here, which is where's the fraud? And this starts not just with deposition. We obviously were summary judgment. But I'll start with the deposition where Mr. Murillo admitted in his deposition he never used the word fraud. He never raised the issue of fraud in the investigation, never in an email. There's no document that he can put in front of you that says, here I said fraud. But it goes before that, too, because in a SOX claim, you have to first file with OSHA, exhaust your administrative remedies, and then you file in federal court. The OSHA complaint doesn't contain the word fraud. The district court complaint doesn't contain the word fraud. Well, in fairness, the district court complaint contains the word lots of fraud, right, but not the right kind of fraud. Correct. Correct. I mean, what he says in his complaint, which I think is critical, which is the actual email he sent, and there's the bullets, and it's on page 8 of the OSHA complaint, and then that carries through to his federal court complaint. It's engaged in unethical business practices involving improper personal relationships, coerced me into using a specific supplier, threatened to share inside and confidential third-party testing results, and verbally reprimanded me on a team call about my military leave. That's what he says he said internally. Now, I understand, and Judge Newsom, your point about Ronnie, where, you know, what's the important fact of what was communicated? Is it at the time? Is it in the complaint? Where is it? And here, even in the complaint where he had an opportunity to review post-termination about what was it I really said, this is what he says he said at the time. And that was consistent, and that's what the district court judge found, is there is not fraud here. And we know for a fact, because it's not in the complaint, it's not in any of the arguments, that we're not talking about securities fraud. So that's off the table. There's no fraud against shareholders here. Mr. Merullo admitted that he hadn't looked at the SEC filings. There's no fraud against Rivian shareholders. In fact, there's no fraud by Rivian at all. So to your point, all of you on the panel, what do we have to focus on? Because securities fraud is not part of this case. It's mail fraud, wire fraud, bank fraud, or securities fraud. Can I ask you one question? Sure, please. Tell me if I've got this right. This seems to me the closest that the complaint gets, and this, I think, is at 27 and 28. As well as activities which threaten the interests of and violated obligations to Rivian shareholders and violations of laws, regulations, and rules enforced by the SEC. That seems to me to get the closest to something that SOC specifies. Why is that not? I would agree it's the closest, but it's still extremely far away. I mean, you have to articulate some specific fraud by the company on its shareholders, and that, as we know from both Ronnie, but we also now know from Murray with the Supreme Court, and we know from many of the cases cited in the briefs, Chao, Rocheleau, that you have to have the basic components. And the quote is, approximate the basic elements of a claim of securities fraud. And that includes see enter. It includes materiality. So I agree with you, Judge Newsom, that yes, that's the closest he gets. But that's purely speculative, and it's not grounded in any of the complaints he made actually at the time. The language that you quoted, isn't that from a securities fraud case, though? Like not a mail or wire fraud case? It was both. In those cases, there's both securities fraud and claims, but also claims of, I think in one of them, mail fraud. But the idea is the mail fraud is somehow still tied to a violation of the securities laws or some sort of fraud on the shareholders. So, I mean, SOX is a statute that was enacted after Enron and after WorldCom to address securities fraud. It's an SEC-based statute that empowers employees to raise issues with public company employers who they believe are violating the laws that protect their shareholders. At its bottom, that's what the statute is. So I have a question in that regard. Sure. Does 1514A require that the targeted crimes, the specified crimes, be committed by the company? Or is it enough if you have the right allegations and the right proof that they be committed by a high enough executive in the company? So think, for example, of Tesla and Mr. Musk. And so if the claim is that Mr. Musk is involved or another high-level executive there is involved in just simply stealing company funds, left and right, unbeknownst to the board of directors, let's say, but to the detriment of shareholders, constituting securities fraud, and an employee complains and gets fired, does he get SOX protection? Well, A, I have to be careful because I represent Tesla and Mr. Musk. Change the company and the chief executive. It's an excellent question, and I think facts and circumstances would matter there. It depends, again, see enter materiality. If what is being fomented is an actual fraud that would manifest itself out to shareholders, I say absolutely. It doesn't have to be the company qua company. No, no, but it has to be enough of an issue within the company. And to your point about senior management of the board, that it has some impact or effect, either from a materiality or center standpoint, on the company's shareholders. My only point is that if you have the right allegations and proof, the complaint doesn't have to be the company committing these crimes against the outside world. It could be intracompany. Well, and I think yes. I'm not sure we have that case yet out there. Collins, which my opposing counsel cited multiple times and the district court judge cited, was arguably like that situation where it was a number of employees that the plaintiff had argued were engaged in various issues. And what was interesting about Collins, and I think it's really important, and Judge Batten distinguished it here, was that also impacted the internal controls of the company. So, Judge Jordan, to your specific question, how a senior executive could get away with that without it impacting internal controls is where I'm struggling. Because there's no way that if it's a multimillion-dollar fraud by a senior executive, that that's not also implicating internal controls, the audit function, the basic functions of the company as it relates externally. Here, as admitted by Mr. Marullo and as noted by the district court judge, these contracts were all under a threshold where Mr. Deutsch had the ability to do those as sole-source contracts. And there is no argument that any of this was material or they didn't get the services. So I do think this is distinguishable, but I think the reason your example would end up being a claim is because I'm hard-pressed to see how it wouldn't impact internal controls and therefore implicate securities and shareholders. Okay, so unless the panel has questions, I know I have lots of time, but I think... I do have a question for you. Yeah, please. So we obviously have to write an opinion in this case. Okay, so what is the standard for what the plaintiff has to show in terms of the fraud or the act under SOX? I had a feeling we might get here. So it's interesting because the split that you noted in Ronnie, and Judge Newman, I know you were on that panel, was between the circuits as it related to whether or not to give Chevron deference to these ARB decisions. We all know Chevron has limited applicability now. So I think, in a way, it's what does the statute actually say? And we heard that the wrong standard is used definitively and specifically. What's interesting is definitively and specifically was also an ARB decision under Platone. So we have a situation where you had an ARB decision on what the standard was. It then reversed course in Sylvester and created a new standard, and that's what caused the split between the circuits as they sought to how much deference to give to that decision in applying the standard. My view is the courts, when they've looked at it independently, have said it has to specifically and definitively relate to one of those categories of fraud. And so to me, post-Chevron, that's the standard. Anything further? No? All right. Thank you very much. Appreciate it. Yes. The paragraph from the complaint that was discussed is paragraph 116, which enlisting the enumerated bases under Sox that Mr. Merullo's complaints factually fell under lists various species of fraud, which would be the male wire bank fraud. Again, I guess the one thing that's a little confusing about that to me is that it seems in that paragraph of the complaint that the aspect of Sox that you get closest to is not male and wire fraud. Let me get the language in front of me. But it's the fifth and sixth categories, any rule or regulation of the SEC or any provision of federal law relating to fraud against shareholders. That's what seems like pages 27 and 28 get closest to. But on appeal, you've clearly tried to make this a wire fraud case, which is like Category 1. Well, and not simply on appeal, Your Honor. Discovery revolved around the question of fraud. Mr. Robertson referred to the fact that at deposition, the plaintiff was questioned about whether he used the magic word of fraud, which a layperson employee who's making a complaint is not required to do. The facts of the complaint and how the complaint is understood by the employer are what is crucial. And again, under Collins, under Lashinsky, the employer's reaction is probative as to whether or not it was reasonably understood to implicate fraud. And here, kickbacks, which include misrepresenting your actions, hiding them from the company, having the company rely upon you as the person who's signing up these contracts, and then the resulting consequences to the company as far as misuse of its resources, those implicate the elements of fraud. The misstatement, the reliance, the loss. The fact is that Mr. Deutsch is an employer under SOX as well. So this is employer fraud. It's not Enron, for sure. It isn't a massive taking from the company. However, Mr. Merulo's complaints did relate to misleading the company, benefiting personally from the company's resources, and the company understood that, took it seriously, and then fired accused and accuser. All of these arguments that we are going through as to whether or not Mr. Merulo's complaint was understood as fraud falls within these categories. These are fact-intensive issues, and they are properly resolved by a fact-finder at trial. How is it understood? Does it really fall under this category? Cases such as Collins, which included overpayment to contractors, and Crane, which included kickbacks, acknowledge that internal controls are implicated by kickback fraud because the person in question is trying to avoid scrutiny of their actions and use company money for their own benefit. Thank you. All right. Thank you both very much. Thank you, Your Honor. I think our next case is...